**GREAT WESTERN CITIES, INC., Plaintiff,**

v.

**Mark P. BINSTEIN, et al., Defendants.**

**No. 78 C 5044.**

United States District Court, N. D. Illinois, E. D.

April 26, 1982.

Stephen J. Spitz, Eugene J. Frett, Sperling, Slater & Spitz, Chicago, Ill., for Mark P. Binstein, plaintiff.

Robert F. Hanley, William D. Heinz, Robert T. Markowski and Craig R. Spiegel, Jenner & Block, Chicago, Ill., for defendants Hunt and HIRCO.

**ORDER**

BUA, District Judge.

Before the court is the petition of Mark P. Binstein for a rule to show cause why

respondents Nelson Bunker Hunt, Hunt International Resources Corporation, Daniel P. Garcia, Cary B. Lerman, and the law firm of Hughes & Hill should not be held in contempt for alleged violations of a consent decree entered between petitioner and Great Western Cities, Inc., the plaintiff in the original action. A hearing was conducted by the court on January 22, 1982. The court makes the following findings of fact and conclusions of law. For the reasons which follow, the petition for a rule to show cause is denied.

## FINDINGS OF FACT

1. Mark P. Binstein ("Binstein") was a defendant in the original action filed herein. He is a party to the Final Judgment and Consent Decree entered in this action by the court on March 9, 1979.

2. Nelson Bunker Hunt ("Hunt") is a Texas resident. He was an officer and director of Great Western United ("GWU"). Thereafter, Hunt became an officer and director of Hunt International Resources Corporation. Presently, Hunt or Hunt family trusts own all of the stock of Hunt International Resources Corporation and GWU, and there are no public shareholders.

3. Hunt International Resources Corporation ("Hunt International") is a Delaware corporation with its principal place of business in Texas.

4. Hunt International is the parent corporation and sole shareholder of its wholly owned subsidiary, GWU. GWU is in turn a holding company whose only asset is plaintiff Great Western Cities, Inc. ("GWC"). The other assets and subsidiaries of GWU were transferred to Hunt International or Hunt sometime prior to 1979.

5. The officers and directors of Hunt International are now, and have been, officers and directors of GWU and, to a lesser extent, GWC.

6. GWC was the plaintiff in the original action filed herein. GWC is a party to the Final Judgment and Consent Decree entered in this action by the court on March 9, 1979.

7. Daniel P. Garcia ("Garcia") is a member of the law firm of Munger, Tolles & Rickershauser, which represents GWC in this action.

8. Cary B. Lerman ("Lerman") is a member of the law firm of Munger, Tolles & Rickershauser, which represents GWC in this action.

9. Hughes & Hill is a law firm located in Dallas, Texas. Hughes & Hill represents Hunt and Hunt International in an action against Binstein captioned "*Hunt International Resources Corp. v. Binstein*," No. CA 3–80–863–F (N.D.Tex.).

10. GWC brought this action against Binstein and others on December 19, 1978.

11. Binstein filed a counterclaim against GWC for malicious prosecution, libel and slander.

12. On March 9, 1979, this court entered a Final Judgment and Consent Decree intended to terminate "now and forever" the legal proceedings between GWC and Binstein. (Consent Decree, p. 2). In accord therewith, this court dismissed with prejudice the counterclaim of Beinstein as well as GWC's action against Binstein.

13. Binstein and GWC were parties to the Final Judgment and Consent Decree. GWC was defined to include "all affiliated persons or entities." Transcripts from the court proceedings on January 29, 1979 and February 13, 1979 were incorporated in and made a part of the Final Judgment and Consent Decree.

14. The Final Judgment and Consent Decree provides, among other things, that Beinstein give notice to GWC of lot purchaser meetings that Binstein will be present at, and permits GWC to attend, record and transcribe those meetings. (Consent Decree, p. 5).

15. GWC's right to notice of lot purchaser meetings, and its rights to attend and transcribe those meetings, were to be used solely "for the purpose of determining whether there has been a violation of the Consent Decree." Transcript of Proceedings on February 13, 1979 ("Tr. 2/13/79"), at p. 18, made a part of the Final Judgment and Consent Decree.

16. The Final Judgment and Consent Decree, and particularly this court's on the record interpretation thereof, governs the subject matter of what Binstein can or cannot communicate to GWC lot purchasers, Binstein's right to be employed or not be employed by a GWC lot purchaser association, the permissible scope of any such association employment, Binstein's right to be compensated, and the basis for any such compensation. (Consent Decree, pp. 3, 4. Transcript of Proceedings, January 29, 1979 ("Tr. 1/29/79"), pp. 87, 95, 96, 100, made a part of the Final Judgment and Consent Decree). The purpose of the Final Judgment and Consent Decree was to resolve for all time the aforesaid rights of Mr. Binstein with respect to GWC. (Consent Decree, p. 2; Tr. 1/29/79, p. 100; Tr. 2/13/79, pp. 16–18).

17. It was the intent of the parties and the court, and a substantial inducement to Binstein and GWC to enter into the Final Judgment and Consent Decree, that all of Binstein's future conduct with respect to GWC be governed by this court.

18. The court retained jurisdiction over Mr. Binstein and GWC in this action for the purpose of monitoring compliance with the Final Judgment and Consent Decree and the court's subsequent orders. (Consent Decree, p. 6).

19. On May 21, 1979, in the context of certain out of state litigation brought by GWC which sought injunctive relief against Binstein as an agent of the Colorado City Lot Owners and Taxpayers Association ("Colorado City Association"), the court enjoined GWC from taking any action inconsistent with the court's order of May 18, 1979.

20. The court's May 18, 1979 order permitted the Colorado City Association and its employee, Binstein, to conduct meetings with lot purchasers, communicate with lot purchasers the facts with respect to the Association, its purposes and goals, its plans to initiate a recovery action against GWC and related entities, the alleged fraud at Colorado City, Colorado, and to collect fees from members of the Association.

21. The court denied, on May 21, 1979, a motion to enjoin GWC from proceeding with its out of state litigation. Thereafter, on October 10, 1979, the court did enjoin GWC, along with its affiliate, Colorado City Development Company, from prosecuting a civil contempt action in the Colorado State Court. On appeal, this injunction was affirmed by the Seventh Circuit.

22. Hunt and Hunt International had actual notice of the May 18 and May 21, 1979, orders.

23. On September 16, 1980, this court ordered that GWC be permitted to attend and transcribe a meeting of lot purchasers to be held in Dallas, Texas on September 16, 1980.

24. In its order of September 16, 1980, the court enjoined GWC from using any information gathered at the September 16, 1980 lot purchasers meeting for purposes other than contempt proceedings in this court.

25. Hunt and Hunt International had actual notice of the September 16, 1980 order.

26. On July 7, 1980, Hunt and Hunt International filed an action against Binstein in the United States District Court for the Northern District of Texas captioned *Hunt International Resources Corp. v. Binstein*, CA 3–80–863–F (N.D.Tex.).

27. Becky Miller attended a meeting of the Colorado City Association on May 22, 1979.

28. Becky Miller is an employee of the law firm of Shank, Irwin, Conant, Williamson & Grevelle, whose principal clients in 1979 included Hunt Oil, Hunt Energy Corp., GWU and GWC.

29. Thereafter, on October 15, 1980, an affidavit was prepared by Becky Miller concerning information obtained at the Colorado City Association meeting. The affidavit was prepared on behalf of Hunt and Hunt International for use in the Hunt/Hunt International Texas action, and the affidavit was so used.

30. Cynthia Pharr attended a meeting of the Cochiti Lake Association on September 16, 1980.

31. Thereafter, on October 15, 1980, an affidavit was prepared by Cynthia Pharr concerning information obtained at the Cochiti Lake Association meeting. The affidavit was prepared on behalf of Hunt and Hunt International for use in the Hunt/Hunt International Texas suit, and the affidavit was so used.

32. On September 5, 1980, Binstein filed in the Texas litigation a motion to dismiss the Texas action for want of jurisdiction or lack of venue or, in the alternative, to transfer the action to Chicago. Hunt and HIRCO filed a memorandum in opposition to that motion; attached to the memorandum were an affidavit of Cynthia Pharr concerning the events at the September 16 meeting and an affidavit by Becky Miller concerning a meeting of the Colorado City Lot Owners Association on May 22, 1979.

33. On October 27, 1980, Beinstein moved this court to enjoin the Texas action and for the setting of a date for assessing criminal and civil contempt fines against Hunt, HIRCO and GWC. Binstein alleged that the filing in Texas of the Pharr and Miller affidavits violated this court's September 16 order.

34. All conclusions of law deemed to be findings of fact are incorporated herein by reference.

## CONCLUSIONS OF LAW

1. The court has subject matter jurisdiction of this motion pursuant to its supervisory power to monitor compliance with the Final Judgment and Consent Decree and the other orders entered in this action.

2. Rule 65(d) provides that an injunction shall describe in reasonable detail the acts restrained and is "binding only upon the parties to this action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed.R.Civ.P. 65(d).

3. Hunt and HIRCO are not officers, agents, servants, employees, or attorneys of GWC. The fact that HIRCO is the great grandparent corporation of GWC, and that Hunt is Chairman of the Board of HIRCO, does not bind them to follow orders entered against GWC. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

4. Therefore, in order to be bound by results in this case, Hunt and HIRCO must have acted in concert with GWC to avoid the orders of this court. Such collusion is not established "merely because persons are interested in the same question or in proving the same question or in proving the same set of facts or because the question litigated is one which might affect such other person's liability as a judicial precedent in a subsequent action." *Baltz v. The Fair*, 178 F.Supp. 691, 693 (N.D.Ill.1959).

5. Binstein has established no proof in support of his contention that the orders entered in this litigation are applicable to Hunt and HIRCO other than to point to the corporate relationship of HIRCO and GWC, as well as to Hunt's interest in HIRCO. Those relationships, however, do not establish a collusive effort to avoid the effect of this court's orders by the filing of the Texas action. Hunt and HIRCO have an independent interest in protecting themselves against federal statutory violations directed at them by Binstein, an interest which is distinct from their investment in GWC's grandparent corporation, GWU. In short, Binstein has not demonstrated that Hunt and HIRCO actively participated with GWC to evade this court's orders rather than acting to protect their own legitimate interests. Therefore, Rule 65 dictates that the orders entered in this case are inapplicable to Hunt and HIRCO.

6. This court's order of September 18, 1980 limited GWC's use of information gained as a result of its attendance at a September 16 meeting of the Cochiti Lake Association to an action for contempt before this court. Binstein argues that Hunt and HIRCO violated that order by filing two affidavits in the Texas action.

7. The affidavit of Becky Miller relates exclusively to a meeting held by Binstein with the Colorado Cities Association on May 22, 1979. Consequently, the filing of Ms. Miller's affidavit does not even call into question this court's September 18, 1980 order, which relates to the use of information gathered at the September 16, 1980 meeting of the Cochiti Lake Association. Therefore, no order of this court was violated by the filing of the Miller affidavit.

8. The affidavit of Cynthia Pharr related to the September 16 meeting. Once again, however, Binstein has failed to establish that Hunt and HIRCO can be held in contempt of this court pursuant to Rule 65. Binstein cannot demonstrate that they acted in collusion with GWC to evade this court's orders.

9. Ms. Pharr did not attend the September 16 meeting pursuant to this court's order but rather upon learning of the meeting from the press and from HIRCO representatives. She attended as a public relations counsel for HIRCO in order to be aware of the statements made by Binstein relating to HIRCO. When asked to identify herself at the meeting, she explicitly stated that she was representing HIRCO. Her presence at the meeting was not pursuant to GWC's rights under the Consent Decree or to the September 18 order, nor was she present on behalf of GWC. The filing of the Pharr affidavit violated no order of this court.

IT IS SO ORDERED.